UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIUS MAYE, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:07-cv-1690 (JCH) |
| | : | |
| RICARDO VARGAS, et al., | : | |
| Defendants, | : | JULY 29, 2009 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 18)**

**I.   INTRODUCTION**

Plaintiff, Marius Maye, brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, alleging excessive force by the defendants during his arrest in violation of his Fourth and Fourteenth Amendment rights.  See Compl. (Doc. No. 1).  The defendants, Ricardo Vargas, Jason Ferri, Mark Martocchio, Ronald Jersey, Jr., Daniel R. Garcia, Orlando Rosado, and Todd Sherback, are all members of the Bridgeport Police Department.  All defendants have moved for summary judgment.  See Def.'s Mot. for Summ. J. (Doc. No. 18).  For the reasons that follow, the court grants the motion in part and denies the motion in part.

**II.   FACTS**

The circumstances leading up to Maye's arrest are hotly contested.  However, taking the evidence in the light most favorable to the plaintiff, the facts for the purposes of this Motion are as follows:

Maye is a convicted felon with an extensive criminal history.  See Def.'s Local

1

Rule 56(a)(1) Statement ("Def.'s 56(a)(1) Stmt.") at ¶ 10.[1]  On June 13, 2006, Detective Ricardo Vargas, Detective Daniel Garcia, and Officer Orlando Rosado were conducting surveillance of Maye based on a tip from a confidential informant that Maye was selling crack cocaine.  See Def.'s 56(a)(1) Stmt. at ¶¶ 9-10, 23, 32.  Maye was observed leaving his home in a tan Buick Regal, and undercover officers, including Detective Vargas, followed him.  See Def.'s 56(a)(1) Stmt. at ¶¶ 12-13, 16.  Officer Rosado and Detective Daniel Garcia did not follow Maye.  See Def.'s 56(a)(1) Stmt. at ¶¶ 25, 33.  Maye entered Interstate 95 North and traveled to the Seaview Avenue exit in Bridgeport.  According to Maye, he was met by unmarked cars blocking the exit ramp.  See Affidavit of Marius Maye ("Maye Aff.") at ¶ 4.  (Doc. No. 36).  Officer Ronald Jersey, Jr., was driving one of the police cars at the bottom of the ramp.[2]  See Def.'s 56(a)(1) Stmt. at ¶ 40; Pl.'s Local Rule 56(a)(2) Statement ("Pl.'s 56(a)(2) Stmt.") at ¶ 40.  Maye then swerved around those cars by driving onto the sidewalk, between a telephone pole and the fence, and continued down Seaview Avenue toward Stratford Avenue.  See Def.'s 56(a)(1) Stmt. at ¶ 46; Pl.'s 56(a)(2) Stmt. at ¶ 46.  The cars at the bottom of the ramp began chasing Maye, and he was concerned that the individuals in those cars were going to harm him.  See Maye Aff. at ¶ 6.  Officer Jersey pursued Maye, but soon lost sight of him.  See Def.'s 56(a)(1) Stmt. at ¶ 52.  Maye has stated he did not see any

---

[1] For the purposes of this section, undisputed facts will be cited to defendants' Local Rule 56(a)(1) Statement.

[2] Officer Jersey has stated that he was driving a marked police car, and that once pursuit began, his emergency lights were flashing and the siren was activated.  See Affidavit of Ronald Jersey, Jr., Ex. H to Def.'s Mem., at ¶¶ 4, 8.  However, the court emphasizes that, on a motion for summary judgment, it is required to resolve disputed facts in favor of the nonmoving party when there is evidence in the record to support the allegation.  Maye has declared that the cars at the bottom of the ramp were unmarked. See Maye Aff. at ¶¶ 4-5.  Resolving such questions of credibility is a task for the factfinder (i.e., the jury), not the court. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (U.S. 1986).

marked police cruisers following him until he was near the end of Stratford Avenue. See Maye Aff. at ¶ 10.

According to Maye, when he realized he was being followed by the police, he did not pull over immediately because he wanted to "return to an African-American neighborhood" because he believed the police would be more likely to harm him if he pulled over in a "white neighborhood." See Maye Aff. at ¶¶ 11-13. Maye turned from Boston Avenue onto Sheridan Street heading south. See Def.'s 56(a)(1) Stmt. at ¶ 61; Pl.'s 56(a)(2) Stmt. at ¶ 61. He was followed by a marked police car driven by Officer Jason Ferri with Officer Todd Sherback riding in the passenger seat. See Def.'s 56(a)(1) Stmt. at ¶ 62. Officer Douglas Bepko[3] followed behind Ferri and Sherback, and Officer Martocchio, a K-9 Unit Patrol Officer, followed Officer Bepko. See Def.'s 56(a)(1) Stmt. at ¶ 64.

According to Maye, he turned onto Ogden Street and pulled over to surrender, parking his car perpendicular to the curb. Maye waved his hand out of the window to demonstrate to the officers that he was surrendering. See Maye Aff. at ¶¶ 18-22. According to Maye, Officer Ferri rammed the back of his car, causing it to smash into the brick wall. See Maye Aff. at ¶¶ 23, 25. Officer Bepko ran up to the driver's side of Maye's car, and Officer Martocchio followed him with his K-9. See Def.'s 56(a)(1) Stmt. at ¶ 69-70. The dog entered Maye's car from the back door, jumped over the seat and barked loudly at him. See Maye Aff. at ¶ 29. According to Maye, when he attempted to get out of the car, after indicating that he was surrendering, he was struck by the police

---

[3] Officer Bepko was not named as a party to this action.

officers on the scene and thrown against a box truck, where an officer attempted to smash his head against the lift gate. See Maye Aff. at ¶¶ 31-34. Police officers punched and kicked Maye, who did not resist and continued to indicate that he was surrendering. See Maye Aff. at ¶¶ 36-39.

Maye lay face down on the ground and spread his arms when told to do so by Officer Martocchio. See Maye Aff. at ¶¶ 40-43. According to Maye, once he had spread his arms, Officer Martocchio, who had control of the K-9, gave a command to the dog, which attacked him and bit him, even though Maye was not resisting. See Maye Aff. at ¶¶ 46-48. The dog continued to bite Maye, even after he asked the police to make the dog stop. See Maye Aff. at ¶ 58. Maye was injured on his arms and his back. See Photographs, Ex. A to Pl.'s Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp."). (Doc. No. 33). Once the dog released Maye at Officer Martocchio's command, Officer Bepko handcuffed him and escorted him to the patrol car. See Def.'s 56(a)(1) Stmt. at ¶¶ 83, 85. Maye was charged with Possession of Narcotics with Intent to Sell, Possession of Marijuana, Destruction of Evidence, Engaging in Police Pursuit, Reckless Driving and Evading Responsibility. See Def.'s 56(a)(1) Stmt. at ¶ 89.

## III.   STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present

such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## IV.  DISCUSSION

The Fourth Amendment prohibits officers from using excessive force when arresting criminal suspects. The test for determining excessive force requires the court to balance the extent of the force used against the countervailing government interests at stake. Graham v. Connor, 490 U.S. 386, 396 (1979). This is an objective reasonableness test, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. It depends on factors specific to each case, such as (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. See id.

Police officers also "have an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in their presence by other officers." See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). "An officer who fails to

intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official."  See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).  Whether an officer had a "realistic opportunity to intervene to prevent the harm from occurring" is a "question of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  Id.  In evaluating a claim of failure to intervene, the court must look separately at different episodes of force that may, together, make up the plaintiff's claim.  See O'Neill, 839 F.2d at 11.

Because this is a section 1983 action, the claims against the individual officers may implicate the doctrine of qualified immunity.  Thus, even if the individual officers committed constitutional violations, they are still entitled to judgment in their favor if they did not violate clearly established rights, about which a reasonable officer would have known.  Paineau v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006).  Qualified immunity adds the "further dimension" in excessive force cases that police officers will be protected when there is a lack of clarity as to the proper application of legal doctrine to the facts at hand.  Saucier v. Katz, 533 U.S. 194, 205 (2001); see also Cowan v. Breen, 352 F.3d 756, 761 (2d Cir. 2003).  Although qualified immunity is a question of law, because issue of reasonableness depends on the facts of the situation, if there is a dispute as to the facts, that must be resolved by the factfinder before qualified immunity can be granted.  See Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).  Therefore, if there are disputed facts such that one version of the facts could demonstrate

unreasonable force by the police, it is not appropriate to find qualified immunity on a summary judgment motion.

    A.    <u>Defendants Vargas, Rosado, Garcia, and Jersey</u>

Defendants Vargas, Rosado, Garcia, and Jersey argue they cannot be liable for excessive force because they were not at the scene at the time of Maye's arrest. <u>See</u> Def.'s 56(a)(1) Stmt. at ¶¶ 19-22, 28-31, 36-39, 99-102. A defendant cannot be held liable under section 1983 unless that defendant was personally involved in the deprivation of the plaintiff's constitutional rights. <u>See, e.g.</u>, <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006). Maye admits that Vargas, Rosado, Garcia and Jersey were not at the scene at the time of his arrest. <u>See</u> Pl.'s 56(a)(2) Stmt. at ¶¶ 19-22, 28-31, 36-39, 99-102. Therefore, they could not have "directly participated in the infraction." <u>See</u> <u>Williams v. Smith</u>, 781 F.2d 319, 323 (2d Cir. 1986). Maye does not argue that any of these four defendants were personally involved in a supervisory capacity. <u>See</u> <u>id.</u> at 323-24. Because the aforementioned defendants could not possibly have been personally involved in any deprivation of Maye's constitutional rights, and because there are no material facts in dispute on the matter of these four defendants, summary judgment is granted for defendants Vargas, Rosado, Garcia, and Jersey.

    B.    <u>Defendants Ferri and Sherback</u>

        1.    Ramming Maye's Car

Ferri was driving and Sherback was riding in the car that collided with Maye's vehicle. The Supreme Court recently stated that, "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing

7

motorist at risk of serious injury or death." See Scott v. Harris, 550 U.S. 372, 386 (2007). Maye has admitted that he was involved in a police chase, although the extent to which it was dangerous is heavily disputed.[4] In such circumstances, the police must weigh the risks the motorist is creating to the public with the risk ramming the car will cause bodily harm to the motorist. See Scott, 550 U.S. at 383-84.

According to Maye, he had pulled over, stopped, and was in the process of surrendering when Officer Ferri rammed him with his police cruiser. See Maye Aff. at ¶¶ 21-25. He was posing no threat to bystanders or officers when Ferri's car struck his; the act of ramming a car in these circumstances cannot be reasonable. Because a jury could believe that Maye was parked and surrendering when Officer Ferri's car rammed his car into a wall, Officer Ferri cannot be granted summary judgment on this element of the excessive force claim. Further, no objective officer would think it reasonable to ram a car in such a situation, so Officer Ferri is not entitled to qualified immunity at this stage.

A defendant must be personally involved in the deprivation of constitutional rights in order to be liable under section 1983. See Farrell, 449 F.3d at 484. Officer Sherback was only a passenger, not the driver, of Officer Ferri's patrol car, meaning he was not personally involved in the collision with Maye's vehicle. The Second Circuit has

---

[4] Defendants argue that Maye was confronted by marked police cars when he exited I-95 on the Seaview Avenue, that he swerved around them onto the sidewalk, and that he led marked police cars on a high-speed chase through Bridgeport, until he lost the police following him. Different police officers caught up with him when he was traveling in the wrong lane, against traffic, on Boston Avenue. According to the police, Maye turned onto Sheriden Street, onto Ogden Street Extension, and then attempted to enter the wrong way into a one-way stretch of Sheriden Street. When Maye swerved to avoid an oncoming car, he struck Officer Ferri's car, and after that collision, his car came to rest against a brick wall. See Def.'s 56(a)(1) Stmt. at ¶¶ 40-68. However, on a summary judgment motion, this court must resolve all disputed facts in favor of the nonmoving party when there is evidence to support it.

held that police officers have an affirmative duty "to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir 1988).  However, the officers must have a "realistic opportunity to attempt to prevent" the constitutional violation to be found liable.  See id.  Because Officer Sherback was in the passenger seat, he had no way to gain control over the patrol car, and had no realistic opportunity to intervene before the collision occurred.  Therefore, summary judgment is granted for Officer Sherback on this element of the excessive force claim.

      2.     Assault

Maye has alleged that he was assaulted by all of the officers on the scene when he exited his car.  See Maye Aff. at ¶¶ 31-32.  Officers Sherback and Ferri do not deny that they were in the general vicinity of Maye's arrest, but argue that they did not arrive at the driver's side of Maye's car until after Maye was handcuffed, because they were stunned by the impact of the vehicles.   See Def.'s 56(a)(1) Stmt. at ¶¶ 72, 86-87.  Defendants argue that, because Ferri and Sherback were not personally involved in any deprivation of Maye's constitutional rights, summary judgment should be granted for them.  See Def.'s Reply at 3.  However, Maye has stated that the police officers "in the automobile that rammed [his] car into the brick wall" were among those running toward him as he exited the car.  See Maye Aff. at ¶ 27.  Because the court must assume the facts most favorable to the plaintiff, this court will assume that Ferri and Sherback, at some point during the altercation between Maye and the police, were present in the vicinity.

Maye has not identified the officers who threw him against the box truck,

punched, and kicked him.  Even if Officers Ferri and Sherback did not take part in the alleged assault, they had an affirmative duty to intervene so long as there was a realistic opportunity to do so.  See O'Neill, 839 F.2d at 11.  The length of time that Maye has alleged the assault took – between throwing him against the truck and calling off the dog's attack – is certainly long enough for any of the officers on the scene to have intervened to prevent the injuries.

Officers Ferri and Sherback are not entitled to summary judgment on this element of the excessive force claim.  Based on Maye's testimony, a jury could accept that Maye was assaulted by the police officers on the scene of his arrest after indicating that he was surrendering, that Ferri and Sherback were on the scene, and that they did not intervene despite a realistic opportunity to do so.  Further, no objective officer would think it reasonable to punch and kick an individual who is indicating surrender, so Officers Ferri and Sherback are not entitled to qualified immunity at this stage.

### 3. Dog Bites

Officers Ferri and Sherback were not in control of the K-9 unit that bit Maye and therefore were not personally involved in that constitutional violation.  See Def.'s 56(a)(1) Stmt. at ¶¶ 70, 80; Pl.'s 56(a)(2) Stmt. at ¶¶ 70, 80.  However, they were in the vicinity during the attack, and, as noted above, had a realistic opportunity to intervene and did not do so.  Therefore, Officers Ferri and Sherback are not entitled to summary judgment on this element of the excessive force claim.  Further, no objective officer would think it reasonable to release a dog on an individual who is indicating surrender, so Officers Ferri and Sherback are not entitled to qualified immunity at this stage.

### C. Defendant Martocchio

#### 1. Ramming Maye's Car

Officer Martocchio was not present in Officer Ferri's patrol car when it collided with Maye's vehicle. See Def.'s 56(a)(1) Stmt. at ¶¶ 58-59, 67. He was not personally involved in Maye's deprivation of rights and had no realistic opportunity to intervene. Therefore, summary judgment is granted for Officer Martocchio on this element of the excessive force claim.

#### 2. Assault

Maye has alleged that he was assaulted by all of the officers on the scene when he exited his car. See Maye Aff. at ¶¶ 31-32. The parties agree that Martocchio was at the scene when Maye exited his car. See Def.'s 56(a)(1) Stmt. at ¶ 70; Pl.'s 56(a)(2) Stmt. at ¶ 70. For the reasons stated above with regard to Officers Ferri and Sherback, Officer Martocchio is not entitled to summary judgment on the assault portion of Maye's excessive force claim.

#### 3. Dog Bites

The parties agree that Officer Martocchio had control of the dog at the scene of the arrest and released the dog, which grabbed onto Maye's arm. See Def.'s 56(a)(1) Stmt. at ¶¶ 70, 80; Pl.'s 56(a)(2) Stmt. at ¶¶ 70, 80. Maye has introduced photographs showing injuries to his arms and his back which appear to be from a dog's bite. See Photographs, Ex. A to Pl.'s Opp. Based on Maye's testimony, a jury could believe that Maye was surrendering on the ground when the dog attacked him, and that Officer Martocchio did not call the dog off after Maye asked him to do so. Therefore, Officer Martocchio is not entitled to summary judgment. Further, no objective officer would

think it reasonable to release a dog on an individual who is indicating surrender, so Officer Martocchio is not entitled to qualified immunity at this stage.

## V. CONCLUSION

Summary judgment as to defendants Vargas, Rosado, Garcia and Jersey is **GRANTED**.  Summary judgment as to defendant Ferri is **DENIED.**  For defendants Sherback and Martocchio, summary judgment is **GRANTED** as to the ramming of Maye's vehicle and **DENIED** as to the assault and dog attack.

**SO ORDERED**.

Dated at Bridgeport, Connecticut this 29th day of July, 2009.

                                               /s/ Janet C. Hall
                                              Janet C. Hall
                                              United States District Judge